James E. BLOMQUIST, David A. Dawson, Larry E. Gray, and Gerard B. Reith, Plaintiffs,

v.

Thyra THOMSON, Secretary of State for the State of Wyoming, Defendant.

No. C83–0318–B.

United States District Court, D. Wyoming.

Feb. 17, 1984.

See also, 10th Cir., 739 F.2d 525.

James C. Linger, Linger & Seymour, Tulsa, Okl., Robert E. Skar, Casper, Wyo., for plaintiffs.

Rowena L. Heckert, Asst. Wyoming Atty. Gen., Cheyenne, Wyo., for defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

This matter came on regularly to be heard by the Court upon the cross motions of the parties for summary judgment, James C. Linger, Esq., and Robert E. Skar, Esq., appearing for plaintiffs, and Rowena L. Heckert, Esq., Assistant Wyoming Attorney General, appearing for defendant, and the Court having read and considered the pleadings, and briefs of the parties and the arguments of counsel, and being fully advised in the premises, FINDS and ORDERS as follows:

Plaintiffs are members of the Wyoming Libertarian party, and are residents of the State of Wyoming. Defendant is the Secretary of State for the State of Wyoming, and has been sued in her official capacity only. Plaintiffs brought this action under 42 U.S.C. Section 1983, alleging that various provisions in the Wyoming Election Code, W.S. Sections 22–1–101 et seq. (1977), violate their constitutional rights under the First and Fourteenth Amendments to the United States Constitution, and seek injunctive relief. Jurisdiction of this Court is invoked under 28 U.S.C. Section 1331. The Court has jurisdiction over the parties and the subject matter of this action, and venue is properly in the United States District Court for the District of Wyoming. There are no genuinely disputed issues as to any material fact, and it is appropriate for this Court to determine this matter upon the

cross motions for summary judgment filed herein.

### Standard of Review.

■ Plaintiffs challenge the validity of W.S. Sections 22–1–102(g), 22–5–201, 22–5–209, 22–5–212, 22–5–215, 22–5–301, 22–5–303, 22–5–304, 22–5–305, and 22–5–307 of the Wyoming Election Code, alleging that such provisions unduly and unnecessarily restrict plaintiffs' right to ballot access. The threshold issue of this case is the level of judicial scrutiny to which said provisions may be subjected. Defendant has not denied that such challenged provisions implicate fundamental rights secured by the First and Fourteenth Amendments. Ballot access restrictions burden two fundamental rights protected by the Constitution, the right to political association, and the right to cast votes effectively. *Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979), citing *Williams v. Rhodes,* 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). The Supreme Court has held that when such "vital individual rights are at stake," the state must establish a "compelling interest" and must "adopt the least drastic means to achieve [its] ends." *Illinois State Board of Elections v. Socialist Workers Party,* supra 440 U.S. at pp. 184–185, 99 S.Ct. at 990–991; *Arutunoff v. Oklahoma State Election Board,* 687 F.2d 1375, 1381 (10th Cir.1982, J. Seymour dissenting); *McLain v. Meier,* 637 F.2d 1159, 1163 (8th Cir.1980); *American Party of Texas v. White,* 415 U.S. 767, 780–781, 94 S.Ct. 1296, 1305–1306, 39 L.Ed.2d 744 (1974).

■ However, no hard-and-fast general rule or standard exists by which to measure state ballot access laws. *Arutunoff v. Oklahoma State Elections Board,* supra at p. 1379. Each case must be resolved on its own facts, after due consideration is given to the practical effect of election laws of a given state, viewed in their totality. *Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). The Court should conduct a careful examination of the challenged statute, and determine whether or not the statute may withstand close scrutiny. The statute should be upheld if the Court determines it advances compelling state interests, that it accomplishes important state goals, and that it does not unduly burden constitutional rights of political parties and their members. However, if the Court determines the statute is unnecessarily oppressive, it should declare it to be unconstitutional. *Id.; McLain v. Meier,* 637 F.2d 1163.

### Challenged Provisions of the Wyoming Election Code:

W.S. Section 22–1–102(g) (1977) defines the term "political party," stating " 'Political party' is a party whose candidate for representative in the congress [sic] of the United States received at least ten percent (10%) of the total vote cast at the last preceding election." Candidates for partisan political offices are either nominees of such "political parties," or are deemed to be "Independent candidates," which is defined by Section 22–1–102(f) as "a person who is running for nomination or election to a public office but who does not represent a political party."

Section 22–5–101 provides for only two means by which a candidate may be nominated for partisan offices filled at a general election. One is by primary election under Sections 22–5–201 to 22–5–215, which is only available to "political parties" as defined above. A political party at a primary election may nominate an entire slate of candidates for public office for the next subsequent general election without being required to show any modicum of support for any individual nominee. Section 22–6–101. The other means is by nomination as an independent candidate through a petitioning process provided in Sections 22–5–301 to 22–5–308. In order to obtain ballot access by petition each potential candidate must file a separate petition supported by signatures of registered electors numbering at least five (5%) of the number of votes cast for representative in Congress in the last general election in the political subdivision for which the petition is filed.

Section 22–5–301. Such petitions may be circulated for signatures only during the calendar year in which the election for the office sought is to be held. Section 22–5–305(a). The petition must be filed not more than ninety (90) days nor less than forty-five (45) days before a general or special election. Section 22–5–307. If a potential candidate succeeds in obtaining ballot access under Sections 22–5–301 to 22–5–308 he will be listed as an independent candidate upon the partisan general election paper ballot. Section 22–6–120(a)(vii). Candidates nominated by political parties through primary elections are listed on said ballot according to party affiliation, which affiliation is clearly set forth upon the ballot. Sections 22–6–120(a)(vi), 22–6–116, 22–6–121.

No other means for ballot access in partisan general elections are provided in the Wyoming Election Code. Thus, by implication, a new political party, or a minor political party, may obtain party access to the ballot only by the following means:

(A) Such party must file a petition on behalf of their candidate for representative in Congress supported by signatures of registered electors numbering at least five percent of the number of votes cast for representative in Congress in the last general election for the State of Wyoming at least forty-five (45) days prior to the next general election.

(B) Such party's candidate for representative in Congress, who will be designated as an independent candidate upon the partisan general election ballot, must receive at least ten percent of the votes cast for such office in the general election.

(C) At this point the party will meet the requirements of Section 22–1–102(g) and will become a "political party" within the meaning of the Wyoming Election Code. If the party then complies with the requirements set forth in Chapter 4 of the Wyoming Election Code concerning election of officers and central committees, conventions and other meetings, such minor party will be entitled to conduct primary elections two years later prior to the next general

election (barring a special election) and will be entitled to sponsor a full slate of candidates, to adopt a party platform, and to have its candidates designated by party affiliation upon the partisan general election ballot for such general election.

Furthermore, members of minor political parties are required to register as independents or nonpartisans under the provisions of the Wyoming Election Code unless and until the minor party obtains "party" status pursuant to the procedures set forth above. Sections 22–3–103, 22–3–104(a), 22–6–101, 22–6–108. Until such time members of minor political parties are designated as independents or nonpartisans upon the official electors registry lists. Section 22–3–108(a)(iv).

The most notable feature of the Wyoming Election Code in this regard is the absence of any current means by which a new or minor political party may gain access to the ballot except as independent candidates. It is conceivable under the provisions of the Election Code that a new political party could foster support of 50% or even 100% of the electorate of the State of Wyoming during an election year and yet its candidates for public office would still be denominated as independent candidates upon the ballot for purposes of the next general election.

In addition to those set forth above, the following benefits inure to "political parties" under the Wyoming Election Code:

(a) The county clerk in each county is required to publish and post a notice of an upcoming primary election at the county's expense pursuant to Section 22–2–109 (1977). No similar benefit is given independent candidates.

(b) Political party central committees, and officials thereof, on request, may obtain computerized voter registration lists under Section 22–2–113(a). In addition three copies of registry lists are automatically forwarded to the county chairman for each political party ten days prior to any election. Section 22–3–109(a) (1983). A minor party may obtain computerized voter

registration lists by means of a candidate's campaign committee or political action committee, Section 22–2–113(a), or may review copies of registry lists posted publicly within the county courthouse. Section 22–3–109(b). However, as was noted above, such lists designate electors either as nonpartisans or according to party affiliation, if declared. Similarly the state abstract prepared after each general election breaks down voting data according to party affiliation as designated upon the registration lists. Section 22–16–116. Section 22–3–108(a)(iv). Thus, the minor party is left with the distinct disadvantage of having to find means by which to ascertain which electors, identified as nonpartisans, in fact are aligned with its position, and which are not.

(c) Candidates for public office who are affiliated with a recognized "political party" may file an application for nomination or election prior to a primary election without being required to file supporting signatures of qualified electors as is required with independent candidates. Section 22–5–204(a). Such filing must be made at least fifty-nine (59) days before the date of the next subsequent primary election. Section 22–5–209 (1983).

(d) The board of county commissioners is required to notify the county chairman of each political party concerning proposed changes in precinct boundaries, or of proposed consolidation or division of precincts at least one month and fifteen days prior to adoption of the proposal, and is further required to send a certified copy of resolutions adopting such changes to such chairman at least five days after adoption of the same. Sections 22–7–102, 22–7–103. All other interested persons, including minor party members, receive notice under the general requirement that proposed changes be published in a newspaper of general circulation within the county once a week for three consecutive weeks prior to the first meeting at which such proposals will be taken up. Section 22–7–102.

(e) Judges of election and counting boards and alternatives are selected by the board of county commissioners in each county solely from lists of registered resident electors submitted by the county chairman of each political party, and serve a term of at least two years after their selection. Sections 22–8–101, 22–8–102, 22–8–104. Each political party is assured equal party representation among judges of election or counting boards. Sections 22–8–108(b), 22–8–109. Independent candidates and minor parties are not permitted to nominate electors for such positions.

(f) Before preparing a voting machine, or an electronic voting device for an election the county clerk of each county is required to give written notice to the county chairman of each political party having a candidate on the ballot stating the time and place where such machine or device will be prepared. Representatives of the political party are entitled to be present to have the machine or device prepared in their presence and to verify proper preparation by signing the seal placed upon the envelope containing the keys to machines which have been tested, prepared, locked and sealed. Sections 22–10–108(a), 22–11–104(b)(iii), 22–10–109(a), 22–10–110. Independent candidates may also be present and are also entitled to have the machine prepared in their presence, and to sign such envelope. However, no notice requirement is set forth pertaining to independent candidates.

(g) The county chairman of each political party is authorized to certify challengers to serve in each precinct. Section 22–15–102. Similarly a county canvassing board is comprised of the county clerk and two (2) electors who must be members of different political parties who are appointed by the board of county commissioners. Section 22–16–101. Such canvassing board is vested with substantial authority under the Wyoming Election Code. *Accord,* Sections 22–16–102 to 22–16–120. Independent candidates and minor parties are not permitted to nominate electors for such positions.

(h) Should a vacancy in the office of representative in Congress occur under the provisions of the Wyoming Election Code

the state central committees of the respective parties are entitled to nominate an elector qualified to hold such office as their candidate to fill such office for the unexpired term, Section 22–18–106. By implication an independent candidate may also obtain ballot access for such office. Section 22–18–107. However, no means by which access may be obtained is specifically set forth, and therefore it must be presumed that an independent candidate may obtain access only by the petition procedure set forth in Sections 22–5–301 to 22–5–308. However, under Section 22–18–107 the petition must be completed and filed, along with supporting signatures, within twenty (20) days after the vacancy is declared. Furthermore, a candidate for the unexpired term may only seek election as a candidate of the political party in which he was registered on the date the vacancy occurred. Section 22–18–108.

(i) Should a vacancy in the office of a member of the State Legislature occur, the county central committee of the political party to which the last incumbent belonged is authorized to select three persons qualified to fill the vacancy as its nominee to fill the office for the unexpired term. Such names are then transmitted to the board of county commissioners who must then appoint one of the three nominees to fill the vacancy. Section 22–18–111 (1983). No apparent means exist within the Election Code to fill vacancies in such offices previously held by incumbents who were not affiliated with a recognized political party.

(j) The state convention of each political party nominating candidates for President and Vice President of the United States is authorized to nominate the party's candidates for presidential electors, the names of which are then filed with the secretary of state. Section 22–19–102. Should a vacancy in the nomination for the office of presidential elector occur, such vacancy may be filled by the state central committee of the political party by certifying the name of the person filling the vacancy with the secretary of state. Section 22–19–105. No apparent means exist within the Wyoming Election Code whereby an independent candidate or unrecognized minor political party may nominate presidential electors, or may fill vacancies in such positions.

(k)(1) A recognized political party is authorized to raise, collect and expend money, or other things of value on behalf of its candidates for public office and is also authorized to aid in the election of its candidates for public office. 22–25–102(a),(b). An unrecognized minor political party may undertake these activities only through the vehicle of a "political action committee" or a "candidates campaign committee." *Id.* Such committees may be formed, however, through simple filing procedures. Section 22–25–101(b). The Code sets ceiling limits upon contributions to a candidate, or to his campaign committee, but does not limit contributions to political parties, and does not limit expenditures by a political party made on behalf of candidates it supports or sponsors. Section 22–25–102(c),(e) (1983).

(2) The Code establishes accounting and reporting requirements concerning campaign related receipts, expenditures and obligations for any candidate in any election. Sections 22–25–103 to 22–25–114. Noncompliance with such provision subjects offenders to criminal charges, and to the risk of forfeiture of the candidate's certificate of nomination or of election if the candidate won the election. Sections 22–25–105, 22–25–108, 22–25–114. Generally speaking such provisions are equally applicable whether a candidate is affiliated with a political party or is classified as an independent candidate. However, the provision makes various distinctions between party affiliated and independent candidates which tend to make the reporting requirements for independent candidates more onerous than those for party affiliated candidates. Staff and postage expenses and, in most cases, advertising expenses incurred by a political party central committee while promoting its candidates are not "identifiable expenses" as the term is defined by the Code. Sections 22–5–103(a), (b), and (c). Thus, such expenses need not be set forth in a party-candidate's financial report.

Section 22–25–106(a). The same rule does not apply to "political action groups" or to a "candidate campaign committee." Reports filed by political action committees or by candidate campaign committees must be filed under oath by both the chairman and treasurer of the committee. Section 22–25–106(c). Reports filed by political party central committees need not be filed under oath. Section 22–25–106(d). The report of a political action committee or candidate campaign committee, if it pertains to more than one candidate, must attribute receipts, expenditures or obligations to each candidate itemized separately. Section 22–25–106(c). However, a report of a political party's central committee need not attribute expenses except where such expenses can be specifically identified to a specific candidate to the exclusion of other candidates on the ticket. Section 22–25–106(d). Finally, political action committees must continue to file financial reports every six months until all debts incurred in a campaign are paid. Section 22–25–106(b). Upon payment of all debts the committee automatically terminates. *Id.* Conversely, no ongoing reporting requirements are established for political parties, and, obviously, a political party does not automatically terminate upon payment of debts incurred in a campaign, and thus need not refile for recognition prior to each new campaign.

It is true that a variety of sections within the Wyoming Election Code indicate that its drafters intended that minor parties could obtain recognized party status under its terms. Sections 22–6–114, 22–6–118(a), 22–6–120(a)(viii), 22–10–110(a)(ix), 22–11–104(a), but we must conclude that most provisions within the Code assume the existence of a two-party system consisting of Democratic and Republican parties. Sections 22–4–117, 22–5–303, 22–8–108(b), 22–13–104(a).

**Balancing Analysis.**

■ Defendants have not denied that the ballot access provisions in question implicate plaintiffs' fundamental rights secured by the First and Fourteenth Amendments. Nor do the plaintiffs deny that the State of Wyoming sought to further legitimate State interests through the restrictions upon ballot access challenged herein. Reasonable classifications which turn upon the political party's success in prior elections, and level of support requirements are not invalid per se. *Arutunoff v. Oklahoma State Election Board, supra* at p. 1378. A state furthers its important interests when it requires a demonstration of a modicum of support for a party before granting official recognition. *Id.* at p. 1379; *Clements v. Fashing, supra; Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971). Such requirements protect the efficiency of election processes, protect against frivolous or fraudulent candidacies, avoid the expense and burden of run-off elections, and avoid voter confusion which may result from overcrowded ballots. *Id.; Williams v. Rhodes, supra.*

■ However, notwithstanding this interest, a state's election laws cannot operate to freeze the political status quo.

"They must recognize that there is a constant fluidity in the fortunes of political parties particularly minor parties. The courts have invalidated state ballot access laws that are oppressive and make it virtually impossible for any but the two major parties to achieve ballot positions for their candidate." *Arutunoff v. Oklahoma State Election Board, supra* at p. 1378.

*See also, Illinois Elections Board v. Socialist Workers Party, supra; American Party of Texas v. White, supra; Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *Kusper v. Pontikes,* 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); *Lubin v. Panish,* 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974).

■ After reviewing the provisions of the Wyoming Election Code, and especially those sections challenged herein, the Court is constrained to conclude that the challenged provisions cannot withstand close scrutiny. Indeed, substantial benefits accrue to political parties recognized under the Wyoming Election Code, although they are accompanied also by substantial re-

sponsibilities and obligations. Yet, while the State has an undeniably legitimate interest in regulating party status under the Election Code, the challenged provisions for minor party ballot access are unduly burdensome. Much less burdensome and equally effective means of obtaining such State interests could have been used. The practical effect of the access provisions challenged herein is to make it virtually impossible for minor parties to obtain ballot access in the year of a general election, and thereby to freeze the political party status quo. No realistic or practical means of current ballot access is provided to minor political parties. In effect, the Code establishes a filing date two years and forty-five days in advance of the first general election in which a minor party could have its name printed upon the general election ballot, and then the party must twice demonstrate a modicum of support, first, by obtaining signatures of registered electors supporting the petition of its candidate for representative in Congress, and subsequently by having its candidate for representative in Congress capture ten percent of the vote cast for such office *as an independent candidate* rather than as a minor party candidate. Thus, it would take a minor party over two years to qualify for ballot access at the next election after that time period.

Several courts have set aside ballot access restrictions which are much less onerous than these provisions. In *McLain v. Meier, supra,* a North Dakota filing deadline for minor parties ninety days in advance of a primary election was held to be unnecessarily oppressive. In *Reagan, et al. v. State of Kansas, et al.,* C82–4083 (D.Kan. June 16, 1983), Kansas statutes requiring petitions showing support by signatures equal to 3% of the votes cast in the latest gubernatorial election be filed to gain party access, but requiring such petitions be signed and circulated only by electors from the same precinct so as to preclude effectively circulation of petitions within public areas were held unnecessarily oppressive. In *Baer, et al. v. Meyer, et al.,* 577 F.Supp. 838 (D.Colo.1984), Colorado

provisions allowing electors to register in the name of minor parties, and granting the right to a minor party candidate's party affiliation printed upon the ballot, but denying the right to hold primary elections, or to sponsor a full ticket of candidates without individual petitions, and further denying other benefits afforded "recognized parties" in the absence of a showing of support similar to that required by W.S. Section 22–1–102(g) were held unnecessarily oppressive. In *Libertarian Party of South Dakota, et al. v. Kundert, et al.,* 579 F.Supp. 735 (D.S.D.1984), a South Dakota requirement that electors signing new party petitions state that they have affiliated one with another for the purpose of forming the party, and that they intend to register for such party and to nominate candidates for public office was held unnecessarily burdensome. *Accord, Anderson v. Mills,* 664 F.2d 600, 609–610 (6th Cir. 1981); *North Carolina Socialist Workers Party v. North Carolina Board of Elections,* 538 F.Supp. 864 (E.D.N.C.1982). These authorities and other cases persuade the Court that less onerous means are available to accomplish the State's legitimate interests, and that the State of Wyoming cannot be permitted to continue to infringe unduly and unnecessarily upon plaintiffs' First and Fourteenth Amendment rights.

Defendant relied primarily upon the holding in *Arutunoff v. Oklahoma State Election Board, supra.* However, the Oklahoma provisions considered in that action were much less onerous than those challenged herein. O.S.A. Section 1–108 provided that a minor political party may, at any time except between July 1 and November 15 of an election year, organize a recognized political party. To do so the party must notify the secretary of the state election board of its intent to do so in writing. Within ninety days after filing such notice the minor party must file petitions supported by signatures numbering five percent of the number of total votes cast in the last general election for either Governor or President and Vice President.

Signatures upon each page are to be limited to registered voters from a single county. Upon review by the state election board, should the petition be determined to be sufficient, the minor party becomes recognized under the laws of the State of Oklahoma with all rights and obligations accruing thereto.

Under the election laws of Oklahoma, should a recognized party's candidate for Governor, or for electors for President and Vice President, fail to receive ten percent of the total votes cast for such office it would cease to be a recognized political party. O.S.A. Section 1–109. At this point the secretary of each county election board was required to change each of the party's registered voters to independent status upon registry lists. O.S.A. Section 1–110. However, even though a political party has ceased officially to exist because of its failure to meet the ten percent retention requirement, its members thereafter could still regain party recognition prior to the next general election by following the petition procedures prescribed for the formation of new political parties under O.S.A. Section 1–108. *Arutunoff v. Oklahoma State Election Board, supra* at p. 1379. Thus, a minor political party in Oklahoma could gain recognized party status currently, and in each successive election year provided it could show the modicum of support required under O.S.A. Section 1–108. The Oklahoma scheme stands in stark contrast to the Wyoming scheme which provides no means at all by which a party may obtain recognized party status within the current election year. The *Arutunoff* decision is not controlling in this case.

While no State may be compelled to adopt the laws of another jurisdiction, *Libertarian Party of Florida v. State of Florida,* 710 F.2d 790, 794 (11th Cir.1983); *Blair v. Hebl,* 498 F.Supp. 756, 762 (W.D. Wis.1980), the Oklahoma statutes just mentioned do show us that means are available to the State by which it could effectively protect its legitimate interests without unduly or unnecessarily burdening plaintiffs' Constitutional rights. While adoption of a scheme similar to that used in Oklahoma could place administrative burdens upon the State, the Court believes that such administrative burdens are not substantial enough to overbalance the infringement of the Wyoming Election Code upon the plaintiffs' constitutional rights.

The defendant urged that plaintiffs' ability to obtain ballot access as independent candidates was adequate to meet plaintiffs' interests, and that the distinction between independent and partisan status upon the ballot is not enough to justify invalidation of the challenged provisions. But, as was noted, recognized parties under the Wyoming Election Code receive substantial benefits wholly apart from their right to have their party affiliation placed upon the partisan general election ballot. It is clearly established that "The political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other." *Storer v. Brown, supra* 415 U.S. at p. 745, 94 S.Ct. at p. 1286; *Arutunoff v. Oklahoma State Election Board, supra* at p. 1380; *MacBride v. Exon,* 558 F.2d 443 (8th Cir.1977). "Sometimes the grossest discrimination can be in treating things that are different as though they were exactly alike". *Jenness v. Fortson, supra* 403 U.S. at p. 442, 91 S.Ct. at 1976. A "candidate who wishes to be a party candidate should not be compelled to adopt independent status in order to participate in the electorial process." *McLain v. Meier, supra* at p. 1165. A minor political party's rights are not adequately protected where the state "... is willing to encourage minority political voices, but only if they are partially stripped of a legitimizing party label." *Id.* at p. 1165 n. 12. "A political group becoming a recognized political party and offering to the electorate a slate of candidates is far different than an individual becoming an independent candidate to run for a political office." *Arutunoff v. Oklahoma State Election Board, supra,* at p. 1380. We conclude that the existence of liberal ballot access provisions concern-

ing independent candidates cannot justify unduly burdensome restrictions placed upon minor party ballot access. The Constitution requires access requirements for all parties to be reasonable. *Id.; McLain v. Meier, supra.*

**Remedy.**

The plaintiffs requested the Court to judicially notice that there is an adequate modicum of support, and therefore to compel defendant to grant the Wyoming Libertarian Party access to the 1984 general election partisan ballot under *McCarthy v. Briscoe,* 429 U.S. 1317, 97 S.Ct. 10, 50 L.Ed.2d 49 (1976); *Hall v. Austin,* 495 F.Supp. 782 (E.D.Mich.1980); *McInereney v. Wrightson,* 421 F.Supp. 726 (D.Del.1976); *McCarthy v. Tribbitt,* 421 F.Supp. 1193 (D.Del.1976); *McCarthy v. Askew,* 420 F.Supp. 775 (S.D.Fla.1976); and *McCarthy v. Slater,* 553 P.2d 489 (Okla.1976). While the Court will not yet do so, the Court will judicially notice the fact that the Wyoming Legislature commenced a new session on February 14, 1984. In the interest of harmonious federal-state relations, the Court will defer any ruling upon the remedial aspects of this action until the Wyoming Legislature has had an opportunity in that session to amend the Wyoming Election Code in light of the provisions of this order. Therefore it is hereby

ORDERED that plaintiffs' Motion for Summary Judgment be, and the same hereby is, granted. It is further

ORDERED that defendant's Motion for Summary Judgment be, and the same hereby is, denied. It is further

ORDERED that final judgment in this action restraining the defendant from enforcing the challenged provisions of the Wyoming Election Code shall be, and it hereby is, deferred until March 2, 1984, so that the Wyoming Legislature shall have an opportunity to amend the Wyoming Election Code in light of this order, and to provide the plaintiffs, and other minor parties, a reasonable means of ballot access.