**The NATIONAL PROHIBITION PARTY and The Colorado Prohibition Party, Plaintiff–Petitioners–Appellants,**

v.

**The STATE of Colorado and the Secretary of State of the State of Colorado, Natalie Meyer, in her official capacity and not individually, Defendants–Respondents–Appellees.**

**No. 87SA12.**

Supreme Court of Colorado, En Banc.

March 14, 1988.

ERICKSON, Justice.

Petitioners the National Prohibition Party and the Colorado Prohibition Party filed suit in the District Court for the City and County of Denver, challenging the enforcement of rule 16.6, 8 C.C.R. 1505–1 (1984). If a candidate is either independent or affiliated with a political organization as defined in section 1–1–104(17), 1B C.R.S. (1980 & 1987 Supp.), the rule requires him to circulate and file a separate petition before his name can appear on a ballot in a general or congressional vacancy election. *See* § 1–4–801(1), 1B C.R.S. (1980 & 1987 Supp.). Before the trial court, the petitioners claimed that the rule misconstrued the petition requirement of section 1–4–801(1), 1B C.R.S. (1980), and was unconstitutional under the United States and Colorado Constitutions. The respondents filed a motion for summary judgment which was granted by the trial court. On appeal, the petitioners claim rule 16.6, which has since been incorporated into section 1–4–801, violates equal protection of the laws and the right to political association. For the reasons stated in this opinion, we deny the petition.

## I.

In 1984, the Secretary of State of the State of Colorado (Secretary) promulgated rule 16.6(a), 8 C.C.R. 1505–1. Rule 16.6(a) interpreted section 1–4–801(1), 1B C.R.S. (1980), as requiring each candidate for public office who is either independent or affiliated with a political organization as defined by section 1–1–104(17) to circulate and file a separate petition before his name can appear on a general election ballot. The requirements of the rule were first implemented by the Secretary in 1980.[1] During several elections prior to 1980, the Secretary permitted any political organization subject to section 1–4–801(1) to submit a single petition containing the names of its entire slate of candidates.

Davis, Graham & Stubbs, Paul S. Hudnut, C. John Koch, Timothy M. Tymkovich, Denver, for plaintiffs-petitioners-appellants.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maurice Knaizer, First Asst. Atty. Gen., Denver, for defendants-respondents-appellees.

1. Colorado first implemented the petition requirement in 1891. In 1970, the Secretary of State of the State of Colorado ruled that nominees of a political organization could be placed on a single petition. The policy change was made without consulting the Attorney General as required by section 49–1–11, 3 C.R.S. (1967 Supp.). In 1979, the Secretary consulted the Attorney General about the proper interpretation of section 1–4–801(1)(a), 1B C.R.S. (1980), and was advised that each petition could not list more than one candidate. The Secretary revised existing policy in 1980 and implemented the Attorney General's recommendation.

On July 31, 1986, the Colorado Prohibition Party and the National Prohibition Party, political organizations subject to section 1–4–801(1), filed suit in the District Court for the City and County of Denver seeking declaratory and injunctive relief. The complaint alleged that the rule misconstrued the plain language of section 1–4–801(1), and violated the first and fourteenth amendments to the United States Constitution and article II, sections 5 and 25 of the Colorado Constitution.[2] After filing an answer denying the complaint's allegations, the respondents moved for summary judgment. The trial court granted the motion, holding that rule 16.6 properly interpreted the petition requirement of section 1–4–801(1) and that the rule was constitutional. We accepted jurisdiction pursuant to section 1–1–112(2), 1B C.R.S. (1980).

## II.

During the pendency of the appeal, section 1–4–801(1), 1B C.R.S. (1980), of the Colorado Election Code was amended to incorporate the requirements of rule 16.6, *see* ch. 34, sec. 10, § 1–4–801, 1987 Colo. Sess.Laws 283–287, and now provides in relevant part:

> (a) A petition for nominating independent candidates shall be prepared which shall contain the name and address of any candidate for the office to be filled. The petition shall designate in not more than three words the political or other name which the signers select. No name of any political party shall be used, in whole or in part, for this purpose. Each petition shall contain only the name of one candidate for one office; except that any such petition for a candidate for governor shall also include a candidate for lieutenant governor, and together they shall be considered joint candidates

at the general election. In the case of nominations for electors of president and vice president of the United States, the names of the candidates for president and vice president may be added to the political or other name designated on the petition.

> (b) The petition for each office shall be signed by registered electors residing within the district or political subdivision in which the officer is to be elected to the number of at least five thousand for the office of president and the office of vice president and one thousand when the nomination is for any other office to be filled or for joint candidates to be voted on by the registered electors of the entire state; of at least five hundred when the office is to be filled by the registered electors of a congressional district; of at least three hundred where the nomination is for a member of the general assembly, district attorney, or district office greater than a county office; and of at least three hundred or ten percent of all the votes cast in the county for the office for which the petition is being circulated, whichever is lesser, when the nomination is for an office to be filled by the registered electors of a county.

> . . . .

> (e) No petition, except petitions for candidates for vacancies to unexpired terms of representatives in congress and for presidential electors, shall be circulated or any signatures obtained thereon prior to forty-nine days before the primary election.

> . . . .

> (h) ... Petitions shall be filed not later than 3 p.m. on the Tuesday preceding the primary election or 3 p.m. on the fifty-

---

**2.** Prior to its amendment in 1987, section 1–4–801(1)(a) provided:

A petition for nominating independent candidates shall be prepared which shall contain the names and addresses of any candidates for the office to be filled. The petition shall designate in not more than three words the political or other name which the signers select. No name of any political party shall be used, in whole or in part, for this purpose.

Any such petition for a candidate for governor shall also include a candidate for lieutenant governor, and together they shall be considered joint candidates at the general election. In the case of nominations for electors of president and vice president of the United States, the names of the candidates for president and vice president may be added to the political or other name designated on the petition.

fifth day preceding the congressional vacancy election.

Any political entity that fails to receive at least ten percent of the total vote cast in the preceding gubernatorial election is a "political organization" subject to section 1–4–801(1). §§ 1–1–104(17), (18), 1B C.R.S. (1980 & 1987 Supp.). Once a political organization obtains ten percent or more of the vote, it is entitled to the benefits, and subject to the burdens, of a political party. *Id.* Because the petitioners did not receive ten percent of the vote in the 1984 gubernatorial election, they do not qualify as a political party but as a political organization.

 The petitioners claim that section 1–4–801(1) violates equal protection of the laws, U.S. Const. amend. XIV and Colo. Const., art. II, § 25, and the right to political association, U.S. Const. amend. I and Colo. Const., art. II, § 5.[3] They argue that the section unconstitutionally discriminates against political organizations by requiring them to bear burdens that are not imposed on majority party candidates. Petitioners also contend that the statute fails to provide a means of ballot access for political organizations separate from that provided for independent candidates and thereby deprives them of the advantages of their political association.[4] We disagree.

 Restrictions on the access of political parties to an election ballot impinge on the fundamental rights of individuals to associate for political purposes and of qualified voters to cast their votes effectively.[5] *Munro v. Socialist Workers Party,* 479 U.S. 189, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986); *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). These rights

"are not absolute and are necessarily subject to qualification if elections are to be run fairly and effectively." *Munro,* 107 S.Ct. at 536–37; *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). Candidates can be required to make a preliminary showing of substantial support to qualify for a place on the ballot. *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); *Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971).

The Supreme Court, however, has only provided limited definitive guidance in determining the validity of restrictions on ballot access. Some cases suggest a strict standard of scrutiny, *see Illinois State Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979); *Williams,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24, while others employ a looser standard, *see Anderson,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547; *Jenness,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554. *See* L. Tribe, *American Constitutional Law* § 13–20 (2d ed. 1988) (discussing inconsistency in Supreme Court cases dealing with ballot access restrictions); *see also* J. Nowak, R. Rotunda & J. Young, *Constitutional Law* 781–85 (2d ed. 1983) (same). In *Anderson,* the Court demonstrated a preference for a more flexible balancing approach than the rigid, strict scrutiny analysis and noted: "Constitutional challenges to specific provisions of a State's election laws, therefore, cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions." *Anderson,* 460

3. Since section 1–4–801(1) was amended to reflect the requirement of rule 16.6(a), the petitioner conceded that the statutory construction issue is now moot. Because the amended statute now mandates a single petition for each independent candidate of a political organization, we must test the constitutionality of section 1–4–801(1) to fully address the petitioners' arguments on appeal.

4. Article II, section 25, of the Colorado Constitution provides a guarantee similar to that under the fourteenth amendment of the United States Constitution. *See Colorado Dep't of Soc. Serv. v. Board of County Comm'rs,* 697 P.2d 1 (Colo.

1985); *Lujan v. Colorado State Bd. of Educ.,* 649 P.2d 1005 (Colo.1982). In testing the validity of restrictions on ballot access under the Colorado Constitution, we apply the requirements of federal law. *MacGuire v. Houston,* 717 P.2d 948 (Colo.1986).

5. In testing claims challenging restrictions on ballot access under the first and fourteenth amendments, the Supreme Court applies the same standard. *See* L. Tribe, *American Constitutional Law* § 13–20 (2d ed. 1988); *see also* J. Nowak, R. Rotunda & J. Young, *Constitutional Law* 781–85 (2d ed. 1983).

U.S. at 789, 103 S.Ct. at 1570. To determine the validity of ballot access restrictions, a court must

> first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Id.* at 789, 103 S.Ct. at 1570.

Petitioners contend that section 1-4-801(1), which requires a single petition to be circulated by each candidate of a political organization, impermissibly burdens constitutional rights under the first and fourteenth amendments. We disagree. In numerical terms, the statute requires only a nominal demonstration of support to place a candidate's name on the ballot. *See Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971) (requiring support equivalent to five percent of vote cast in preceding election is constitutional); *Hall v. Simcox,* 766 F.2d 1171 (7th Cir.) (two percent), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 459 (1985); *Libertarian Party of Virginia v. Davis,* 766 F.2d 865 (4th Cir.1985) (requiring support of 200 voters from each congressional district), *cert. denied,* 475 U.S. 1013, 106 S.Ct. 1190, 89 L.Ed.2d 305; *Populist Party v. Herschler,* 746 F.2d 656 (10th Cir.1984) (per curiam) (five percent); *Libertarian Party v. Florida,* 710 F.2d 790 (11th Cir.1983) (three percent), *cert. denied,* 469 U.S. 831, 105 S.Ct. 117, 83 L.Ed.2d 60 (1984); *Arutunoff v. Oklahoma State Election Bd.,* 687 F.2d 1375 (10th Cir.1982) (five percent), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1892, 77 L.Ed.2d 282 (1983); *Anderson v. Mills,* 664 F.2d 600 (6th Cir.1981) (5,000 signatures). *But see Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (fifteen percent support requirement is unconstitutional). Moreover, the candidate does not have an unduly short period of time to collect the signatures. Candidates have approximately a month to satisfy the minimal support requirements of section 1-4-801(1). §§ 1-4-801(1)(e), (h), 1B C.R.S. (1980 & 1987 Supp.). The deadline for filing the petition is immediately prior to the primary election, which is held in August of the year of the general election, or fifty-five days before a congressional vacancy election. *Id.;* §§ 1-1-104(23), 1-4-101, 1B C.R.S. (1980 & 1987 Supp.); *see American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974) (constitutional to require party to procure at least one percent of votes cast in prior general election within 55 days); *Jenness v. Fortson,* 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (constitutional to require candidate to obtain, within 180 days, signatures of at least five percent of those eligible to vote at last election for office sought); *Populist Party v. Herschler,* 746 F.2d 656 (constitutional to require candidate to file petition containing at least five percent of votes in prior election within 45 to 90 days of general election). Any registered elector can sign the petition even if he is affiliated with a political party. §§ 1-2-101, -104; 1-4-801.

The significant participation of political organizations in Colorado elections establishes the ability of candidates to satisfy the requirements of section 1-4-801(1). In 1982, the single petition requirement was enforced and the Colorado Prohibition and Libertarian Parties each placed candidates on the ballot for Governor, Lieutenant Governor, State Treasurer, and Regent of the University of Colorado. The Prohibition Party also nominated by petition a candidate for member of the State Board of Education. In 1984, both parties ran candidates for President, Vice President, and United States Senator, and the Prohibition Party entered a candidate for Regent of the University of Colorado. In 1986, the Prohibition Party successfully circulated candidate petitions for United States Sena-

tor, Governor, Lieutenant Governor, Secretary of State of the State of Colorado, State Treasurer, member of the State Board of Education, and Regent of the University of Colorado. In the elections, there were also several independent candidates and candidates from the Socialist Workers Party.

The burdens placed on political organizations under section 1–4–801(1) are no more restrictive than those placed on candidates from political parties. *See* §§ 1–4–601 to –701. Candidates from political parties can be placed on a party's ballot for its primary election either by a certificate of designation by assembly or by petition. § 1–4–102. Under section 1–4–601, a candidate is designated by assembly if he receives thirty percent or more of the assembly vote. If no candidate receives at least thirty percent of the vote, a second ballot of all the candidates is cast, resulting in the certification of candidates then receiving thirty percent or more, or of the two candidates receiving the highest number of votes if none receives thirty percent or more. § 1–4–601(2). A party candidate is placed on a ballot by petition if he obtains sufficient signatures to satisfy section 1–4–603. At the primary election, a candidate must obtain a plurality of votes to appear on the party's ballot for the general election. § 1–4–104. All candidates also may choose to have the name of an affiliated political organization or political party appear on the general election ballot, and the name is protected from appropriation by other candidates. *McBroom v. Brown*, 53 Colo. 412, 127 P. 957 (1912); § 1–6–402(4); *see Baer v. Meyer*, 728 F.2d 471 (10th Cir. 1984).

To require political organizations under section 1–1–104(17) to comply with the elaborate requirements for a political party would inhibit such entities from placing candidates on the ballot. In *Jenness*, the Supreme Court examined a statutory scheme virtually identical to the provisions of the Colorado Election Code. The Court found that two avenues to the general election ballot—by primary election and by petition—were acceptable and desirable because the interests of small political parties would not be advanced by forcing them to "establish all of the elaborate statewide, county-by-county, organizational paraphernalia required of a 'political party' as a condition for conducting a primary election." *Id.*, at 441, 91 S.Ct. at 1975; *see Anderson v. Mills*, 664 F.2d 600, 606–607 (6th Cir.1981) (rejecting claim that different ballot access requirements for major political parties as compared to minor political parties and independent candidates violated equal protection). Under section 1–4–801, small, poorly financed political organizations are not required to comply with the extensive requirements imposed upon candidates of political parties, but can still have their candidate appear on the general election ballot.

The respondent sets forth several interests justifying the burdens imposed by section 1–4–801 on a political organization's access to the election ballot. Colorado has a substantial interest in requiring that candidates show a significant modicum of support. Support requirements preserve the integrity of the electoral process by avoiding voter confusion, ballot overcrowding, and the presence of frivolous candidates. *Munro*, 107 S.Ct. at 537–38; *Anderson*, 460 U.S. at 788–89 n. 9, 103 S.Ct. at 1569–70 n. 9. Since the minimal burdens imposed on the petitioners' constitutional rights are outweighed by the substantial state interests furthered by restricting access to election ballots, we conclude that section 1–4–801(1) satisfies the requirements of equal protection of the laws and the right of association.[6]

Accordingly, we deny the petition.

---

**6.** Petitioners assert that *McLain v. Meier*, 637 F.2d 1159 (8th Cir.1980), and *Blomquist v. Thomson*, 591 F.Supp. 768 (D.Wyo.1984), stand for the proposition that candidates of minor political parties and independent candidates must be subject to different ballot access restric-

tions under the Constitution. We disagree. In both cases, the ballot access restrictions were invalidated on grounds distinguishable from this case. *See McLain v. Meier,* 637 F.2d 1159 (requirement that minor political party procure signatures of 3.3 percent of state's electorate to place its candidates on ballot was unconstitutional because of June 1 filing deadline and high signature requirement); *Blomquist v. Thomson,* 591 F.Supp. 768 (ballot access restrictions requiring minor political party to place candidates on ballot as independents unconstitutional because of early filing deadline and because candidate appeared on ballot as inde-

pendent rather than as candidate of minor political party).