710 F.2d 790
 LIBERTARIAN PARTY OF FLORIDA, an unincorporated association,
Alan Turin, William Marina, Doug Ramsay and Ed
Clark, Plaintiffs-Appellants,
v.
STATE OF FLORIDA, George Firestone, as Secretary of State &
Chief Election Officer of the State of Florida, et
al., Defendants-Appellees.
 No. 82-5617.
 United States Court of Appeals,
Eleventh Circuit.
 July 29, 1983.
 
 Robert W. Smith, Pino, Knox & Smith, P.A., Orlando, Fla., for plaintiffs-appellants.
 Kent A. Zaiser, Dept. of Legal Affairs, Civil Div., Tallahassee, Fla., for State of Fla. and Firestone.
 Scott E. Wilt, Orlando, Fla., Murray A. Greenberg, First Asst. County Atty., Miami, Fla., David Cardwell, Lakeland, Fla., for Jane Carroll, et al.
 Appeal from the United States District Court for the Middle District of Florida.
 Before RONEY and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 RONEY, Circuit Judge:
 
 
 1
 This is a ballot access case. Plaintiffs sought a declaratory judgment and preliminary injunction alleging that Florida's Election Code, primarily its 3% statewide petition requirement, constitutes an impermissible burden and prior restraint in violation of the first and fourteenth amendments, and invidiously discriminates against them in violation of the equal protection clause of the fourteenth amendment. The district court held the statutes constitutional. On appeal, the plaintiffs contend the district court erred in applying an incorrect level of scrutiny to appraise the challenged statutes, and argue the state has not adopted the least drastic means to regulate ballot access. Applying what appears to be rather settled law, we affirm.
 
 
 2
 Plaintiffs include the Libertarian Party of Florida (the Party), which qualifies as a minor political party under Florida law, Fla.Stat.Ann. Sec. 97.021(14) (West 1982), and its chairman, Doug Ramsay. Other plaintiffs are party members who ran for public office in the November 1982 elections: Alan Turin, candidate for the state legislature; William Marina, candidate for statewide office; and Ed Clark, candidate for United States President.
 
 
 3
 Fla.Stat.Ann. Sec. 99.096(1) (West 1982)[1] provides that a minor political party may have the names of its candidates for statewide office printed on the general election ballot if a petition requesting that the party be assigned a position on the ballot is signed by 3% of the state's registered voters. If the party thus qualifies to have candidates for statewide office, it may have the names of its candidates for local offices printed on the general election ballot by filing a petition requesting that the party be assigned a position on the general election ballot signed by 3% of the registered voters of the geographic entity represented by the office.
 
 
 4
 To have its candidates listed by party affiliation on the November 1982 ballot, the Party had to satisfy the 3% statewide petition requirement by gathering the signatures of 144,492 voters.
 
 
 5
 Plaintiffs concede, as they must, that the state has an interest in regulating the election process and avoiding voter confusion. That these, and the other interests asserted, are compelling has been well established under decided cases. Lubin v. Panish, 415 U.S. 709, 715, 94 S.Ct. 1315, 1319, 39 L.Ed.2d 702 (1974); American Party of Texas v. White, 415 U.S. 767, 782 n. 14, 94 S.Ct. 1296, 1307 n. 14, 39 L.Ed.2d 744 (1974); Bullock v. Carter, 405 U.S. 134, 145, 92 S.Ct. 849, 857, 31 L.Ed.2d 92 (1972). The Supreme Court stated in Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971), that a state has an important interest "in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot--the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election." Id. at 442, 91 S.Ct. at 1976.
 
 
 6
 The question presented is whether Florida has chosen "the least drastic means" to protect those interests. At the outset, we note that the Supreme Court has already affirmed a district court decision upholding the constitutionality of Florida's 3% statewide requirement as applied to minority parties. Beller v. Kirk, 328 F.Supp. 485 (S.D.Fla.1970), aff'd mem., 403 U.S. 925, 91 S.Ct. 2248, 29 L.Ed.2d 705 (1971). Cf. Anderson v. Celebrezze, --- U.S. ----, ---- n. 5, 103 S.Ct. 1564, 1567-1568, n. 5, 75 L.Ed.2d 547 (1983) (precedential effect of summary affirmance extends only to precise issues presented and necessarily decided). If that case does not control the outcome of this case, analysis of the other Supreme Court ballot access cases does.
 
 
 7
 A review of the various statutory schemes upheld by the Court supports the view that states are free to adopt differing means of regulating ballot access, as long as the particular scheme is not unnecessarily burdensome. Compare Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554; Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); and American Party of Texas v. White, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974). The Court has clearly upheld requirements that a request for ballot access be supported by some significant number or percentage of petitioners. Storer v. Brown, 415 U.S. at 740, 94 S.Ct. at 1284 (5% requirement not facially unconstitutional); American Party of Texas v. White, 415 U.S. at 783 & n. 15, 788-89, 94 S.Ct. at 1307 & n. 15, 1309-1310 (upholding statute imposing on minority parties "lenient" 1% requirement which was coupled with other "somewhat burdensome" requirements, and requiring independent candidates to obtain signatures of 3% or 5% depending on office); Jenness v. Fortson, 403 U.S. at 432, 442, 91 S.Ct. at 1976 (5% of those eligible to vote in previous election is constitutional).
 
 
 8
 Obviously any percentage or numerical requirement is "necessarily arbitrary." American Party of Texas v. White, 415 U.S. at 783, 94 S.Ct. at 1307. Once a percentage or number of signatures is established, it would probably be impossible to defend it as either compelled or least drastic. At any point, probably a fraction of a percentage point less, or a few petitioners less would not leave the interests of the state unprotected. Any numerical requirement could be challenged and judicially reduced, and then again, and again until it did not exist at all. This is not the thrust of the Court's teachings, however. Rather, a court must determine whether the challenged laws "freeze" the status quo by effectively barring all candidates other than those of the major parties, Jenness v. Fortson, 403 U.S. at 439, 91 S.Ct. at 1974, and provide a realistic means of ballot access. American Party of Texas v. White, 415 U.S. at 783, 94 S.Ct. at 1307. The focal point of this inquiry is whether a "reasonably diligent [ ] candidate [can] be expected to satisfy the signature requirements." Storer v. Brown, 415 U.S. at 742, 94 S.Ct. at 1285. Thus, the test is whether the legislative requirement is a rational way to meet this compelling state interest. The least drastic means test becomes one of reasonableness, i.e., whether the statute unreasonably encroaches on ballot access. See Anderson v. Celebrezze, --- U.S. at ---- & n. 9, 103 S.Ct. at 1570 & n. 9 (1983) (state's important regulatory interests are generally sufficient to justify reasonable restrictions). An examination of the Florida statute demonstrates that it does not.
 
 
 9
 First of all, the argument that Florida's 3% requirement must be stricken as unconstitutionally burdensome because a majority of states protect interests similar to Florida's by imposing a lesser requirement is unavailing. See Beller v. Kirk, 328 F.Supp. at 486. A court is no more free to impose the legislative judgments of other states on a sister state than it is free to substitute its own judgment for that of the state legislature. Storer v. Brown, 415 U.S. 729-30, 736, 94 S.Ct. 1278-1279, 1282.
 
 
 10
 As did the district court, we note those parts of the Florida statute that ease a party's ability to obtain signatures. The Florida Election Code places no restrictions on who can sign a petition other than requiring that a signer be a registered voter. Thus, a person can sign regardless of party affiliation. Florida does not prohibit those who have previously voted in another party's primary from signing a petition, contrary to other states whose schemes have been upheld. See Storer v. Brown, 415 U.S. at 727, 741, 94 S.Ct. at 1277, 1284 (California); American Party of Texas v. White, 415 U.S. at 785-86, 94 S.Ct. at 1308-1309 (Texas).
 
 
 11
 Neither does Florida preclude a voter from signing a petition if he or she has previously signed that of another party. See Socialist Workers Party v. Rockefeller, 314 F.Supp. 984, 997 (S.D.N.Y.) (upholding New York law providing that a person may not sign a nominating petition if he or she has signed a petition of another candidate for same office), aff'd mem., 400 U.S. 806, 91 S.Ct. 65, 27 L.Ed.2d 38 (1970).
 
 
 12
 There are no geographical limitations on the number of signatures which can be gathered from a certain area. A party can thus concentrate its petition efforts in populated areas. Cf. Moore v. Ogilvie, 394 U.S. 814, 818-19, 89 S.Ct. 1493, 1495-1496, 23 L.Ed.2d 1 (1969) (striking down on one-person-one-vote principles Illinois law requiring 25,000 signatures, which had to include 200 signatures from each of at least 50 counties).
 
 
 13
 Florida imposes no limit on the number of signatures a party may submit in its effort to meet the 3% requirement. Plaintiffs estimated they needed one-and-a-half times the 144,492 signatures required, or 220,000 signatures, to ensure they had enough valid signatures under Sec. 99.096(1). See Storer v. Brown, 415 U.S. at 738, 94 S.Ct. at 1283 (California law required petition's signature to total at least 5% but not more than 6% of vote cast in preceding general election). There are 4.8 million voters registered in Florida, each of whom may sign a petition without restriction.
 
 
 14
 Under the Florida statute, the Party had from January 12 to September 7, 1982, or 188 days, to conduct its petitioning effort. The time given to gather signatures compares favorably to those previously found permissible. See Jenness v. Fortson, 403 U.S. at 433, 91 S.Ct. at 1971 (180 days); Storer v. Brown, 415 U.S. at 739-40, 94 S.Ct. at 1283-1284 (24 days); American Party of Texas v. White, 415 U.S. at 786, 94 S.Ct. at 1308 (55 days).
 
 
 15
 In both 1974 and 1976, the American Party qualified its slate of candidates by meeting the 3% requirement, thus demonstrating that Florida law does not freeze the status quo but provides a realistic means of access.
 
 
 16
 Some of the plaintiffs in this case testified they had not even attempted to undertake a petition drive because in their view the 3% requirement simply was impossible to meet. Plaintiffs failed to present factual evidence that they were precluded from obtaining ballot status by the challenged regulations. Conclusory allegations cannot prevail. American Party of Texas v. White, 415 U.S. at 781, 790, 94 S.Ct. at 1306, 1310.
 
 
 17
 Florida's procedures are not impermissibly burdensome as to cost. Florida provides petitions free of charge. Fla.Stat.Ann. Sec. 99.096(2) (West 1982). County election supervisors charge 10 cents per signature to cover the costs of verifying the petitions, but they may use random sampling techniques which reduce the number of signatures checked and therefore the cost. Fla.Stat.Ann. Sec. 99.097(1)(b) (West 1982). Although filing fees may be waived, there is no provision for waiver of the 10-cent charge for minority parties. Id. at Sec. 99.097(4). Plaintiffs have cited no cases holding that states must provide free access to the ballot in all circumstances. That minor parties must incur some expenses in accumulating the necessary signatures to qualify for the ballot does not constitute an equal protection violation. American Party of Texas v. White, 415 U.S. at 793-94, 94 S.Ct. at 1312-1313.
 
 
 18
 In local elections, independent candidates may be listed on the ballot by filing petitions signed by 3% of the voters in that district. Fla.Stat.Ann. Sec. 99.0955 (West 1982).[2] In contrast, Sec. 99.096(1) requires minor parties to file the local 3% petition plus qualify by the statewide 3% petition. Plaintiffs rely on Illinois State Board of Elections v. Socialist Workers Party, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979), to challenge this distinction. That case does not support plaintiffs' position. The Illinois statutes required independent candidates or new political parties to obtain more signatures to run for mayor of Chicago than were required to run for statewide office. The Court stated that when a state has determined that a smaller number of signatures in a larger political unit serves its interests, the larger signature requirements for candidates seeking local offices cannot reasonably be justified. 440 U.S. at 186-87, 99 S.Ct. at 991.
 
 
 19
 Plaintiffs' real complaint is that a minor political party may not run a candidate in a local election without first obtaining access to the state's general election ballot through the 3% statewide petitioning requirement. The district court correctly recognized that the qualitative difference between an independent candidacy and a party candidacy justifies differences in treatment. Storer v. Brown, 415 U.S. at 745, 94 S.Ct. at 1286. With an independent candidate, a state is free to assure itself he or she is "truly independent." Id. at 746, 94 S.Ct. at 1287; MacBride v. Askew, 541 F.2d 465, 468 (5th Cir.1976). When candidates list a party affiliation, however, the voters and the state are entitled to some assurance that particular party designation has some meaning in terms of a "statewide, ongoing organization with distinctive political character." Storer v. Brown, 415 U.S. at 745, 94 S.Ct. at 1286. Requiring a party to meet the 3% requirement on a state basis helps achieve this goal. It protects the party's name and platform against use by unauthorized, truly independent candidates who seek to play off the party's success for their own benefit.
 
 
 20
 We discern no error in the district court's disposition of plaintiffs' remaining challenges to some 15 other provisions of the Election Code, including chapter 101 in its entirety. Plaintiffs do not seriously challenge the decision below as to some of these sections, and their arguments as to others are without merit.
 
 
 21
 As a final matter, we hold the district court did not err in dismissing Ed Clark for lack of standing. The court clearly had authority to do so, as standing is an aspect of justiciability under Art. III of the United States Constitution. Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204-2205, 45 L.Ed.2d 343 (1975). Clark, a resident of California, ran for United States President in 1980 as the Libertarian Party's candidate. He was on the ballot in Florida. He testified at trial that he is not presently a member of the Libertarian Party of Florida, is not presently a candidate for office in Florida or anywhere, and has no present intention to run for office again. Thus, he has not alleged such a personal stake in the outcome of this controversy as to warrant his invocation of federal court jurisdiction. Warth v. Seldin, 422 U.S. at 498, 95 S.Ct. at 2204-2205 (citing Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)).
 
 
 22
 Defendants moved this Court to dismiss Alan R. Turin as an appellant because the issues are moot as to him. To the contrary, however, the case is one where the controversy is "capable of repetition, yet evading review." Storer v. Brown, 415 U.S. at 737 n. 8, 94 S.Ct. at 1282 n. 8 and authorities cited therein. The motion is denied.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 The petitioning requirements minority party candidates must meet to qualify for statewide and local ballot positions are as follows:
 A minor political party may have the names of its candidates for offices which are elected on a statewide basis printed on the general election ballot in an election in which one or more of those offices will be filled if a petition requesting that the party be assigned a position on the general election ballot is signed by 3 percent of the registered electors of the state, as shown by the compilation by the Department of State for the last preceding general election. A minor political party may have the names of its candidates for offices which are elected on less than a statewide basis printed on the general election ballot in an election in which one or more of those offices are to be filled if such party has qualified by petition to have a slate of candidates for offices elected on a statewide basis printed on the ballot and if such petition requesting that the party be assigned a position on the general election ballot is signed by 3 percent of the registered electors of the district, county, or other geographical entity represented by the office, as shown by the compilation by the Department of State for the last preceding general election.
 Fla.Stat.Ann. Sec. 99.096(1) (West 1982).
 
 
 [2]
 The petitioning requirements imposed on independent candidates provide:
 A candidate for an office elected on a statewide basis shall obtain the signatures of a number of the qualified electors equal to 3 percent of the registered electors of Florida, as shown by the compilation by the Department of State for the last preceding general election. When joint candidacies for the offices of Governor and Lieutenant Governor are provided by law, independent candidates for the offices of Governor and Lieutenant Governor shall form a joint candidacy, and only one petition shall be used to place both names on the ballot as otherwise provided in this section. A candidate for any federal, state, county, or district office to be elected on less than a statewide basis shall obtain the signatures of a number of the qualified electors of the district, county, or other geographical entity equal to at least 3 percent of the total number of the registered voters of the district, county, or other geographical entity represented by the office sought, as shown by the compilation by the Department of State for the last preceding general election.
 Fla.Stat.Ann. Sec. 99.0955(2) (West 1982).