The LIBERTARIAN PARTY OF ALA-
BAMA; S.D. Yana Davis; Lanier Davis;
David Bergland; Timothy Gatewood;
and Stephen Smith, Plaintiffs,

v.

George C. WALLACE, Governor of the
State of Alabama; Charles Graddick,
Attorney General for the State of Ala-
bama; and Don Siegelman, Secretary
of State for the State of Alabama, De-
fendants.

Civ. A. No. 83–T–1040–N.

United States District Court,
M.D. Alabama, N.D.

April 12, 1984.

Stephen R. Fielder, Terra Alta, W.Va.,
and John V. Denson, Samford, Denson,
Horsley, Pettey, Martin & Barrett, Opelika,
Ala., for plaintiffs.

Linda Breland, Asst. Atty. Gen., Mont-
gomery, Ala., for Wallace & Graddick.

Charles Redding Pitt, Montgomery, Ala.,
for Don Siegleman.

MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

The issue before the court on counter-
motions for summary judgment is whether
Alabama's "level of support requirements"
unconstitutionally restrict the access of mi-
nor political parties to the electoral ballot.
For reasons which follow, the court holds
that they do not.

I.

On May 4, 1982, Alabama enacted a new
ballot access law: § 17–8–2.1 Ala.Code
(Supp.1983). This law, in conjunction with
already existing §§ 17–16–2, 17–16–3 Ala.
Code (Supp.1983), provides a two-track sys-
tem by which a political party may have its
name placed on a ballot for statewide and
local elections: (1) a candidate of the party
must have garnered at least 20% of votes
cast in the last general election; or (2) the
party must gather one percent of the signa-
tures of qualified electors who cast ballots
for governor in the last general election.[1]

1. Section 17–8–2.1 provides
   (a) No political party, except those qualified
   as a political party under Title 17, chapter 16,

shall be included on any general election bal-
lot unless:

If the office sought requires a statewide vote, the percentage requirements apply statewide; but if the party is seeking only a local office, the percentage requirements apply to the local political unit only. The Secretary of State, who is responsible for monitoring and implementing the level of support requirements, has also adopted the policy that if a party is qualified statewide it is also qualified, without further filings, for all local offices throughout the state.

Recently, the Libertarian Party, a minor political party, has sought unsuccessfully to have its name placed on the Alabama ballot for elections for national, state and local offices. In the last election, the Party's best showing statewide or locally was 8.08%; and the party has been unable to gather the required number of signatures for any office. The Party and several of its members and candidates have brought this lawsuit claiming that section 17–8–2.1, in conjunction with sections 17–16–2 and 17–16–3, impermissibly restricts the Party's access to the ballot in Alabama, in violation of the first and fourteenth amendments to the U.S. Constitution. They contend that the levels of support required for a party to secure ballot access impermissibly burden freedom of speech and association and invidiously discriminate against the Party. They base their lawsuit on 42 U.S.C.A. § 1983 and 28 U.S.C.A. §§ 2201, 2202, and they seek declaratory and injunctive relief. The court's jurisdiction has been properly invoked pursuant to 28 U.S.C.A. §§ 1331, 1343. The defendants are Alabama officials charged with implementing and enforcing the state's election laws.

## II.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). The parties agree that there are no genuine disputes as to any material facts. Therefore, the issue before this court is purely one of law.

■ States have an important interest in protecting their electoral processes through restrictions that eliminate fraudulent or frivolous candidacies, ensure efficient election procedures, and minimize voter confusion as the result of overcrowded ballots. *Clements v. Fashing,* 457 U.S. 957, 964, 102 S.Ct. 2836, 2844, 73 L.Ed.2d 508 (1982) (plurality opinion); *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971). States may therefore require that a political party demonstrate a certain level of support among the electorate before it may obtain a place on the ballot. *Jenness,,* 403 U.S. at 442, 91 S.Ct. at 1976.

■ Such restrictions, however, substantially implicate constitutionally protected

(1) The party shall have filed with the secretary of state or other appropriate official at the same time set by law in section 17–16–11, for candidates in primary elections to qualify a list of the signatures of at least one percent of the qualified electors who casts ballots for the office of governor in the last general election for the state, county, city, district or other political subdivision in which the political party seeks to qualify candidates for office; and unless

(2) The party shall have fulfilled all other applicable requirements of federal, state or local laws.

(b) The provisions of this section are supplemental to the provisions of Title 17, chapter 16, and other laws regarding the conduct of election in Alabama, and shall repeal only those laws or parts of laws in direct conflict herewith.

Section 17–16–2 provides:

An assemblage or organization of electors which, at the general election for state and county officers then next preceding the primary, casts more than 20 percent of the entire vote cast in any county is hereby declared to be a political party within the meaning of this chapter within such county; and an assemblage or organization of electors which, at the general election for state officers then next preceding the primary, casts more than 20 percent of the entire votes cast in the state is hereby declared to be a political party within the meaning of this chapter for such state. And section 17–16–3 provides:

In determining the total vote of a political party whenever required by this chapter, the test shall be the total vote received by a candidate of that party who received the highest vote total of any of the candidates of that party.

liberties under the first amendment and the equal protection clause of the fourteenth amendment. The Supreme Court has observed, for example, that "[r]estrictions on access to the ballot burden two distinct and fundamental rights, 'the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively.'" *Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979) (*quoting Williams v. Rhodes,* 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968)). As a result, the Court has stated that states must adopt "the least drastic means to achieve their ends." 440 U.S. at 185, 99 S.Ct. 991. Therefore, the critical issue for this court is whether Alabama's level of support requirements are the least drastic means to protect the state's interests.

The least drastic means test is more easily stated than applied. In *Libertarian Party of Florida v. State of Florida,* 710 F.2d 790 (11th Cir.1983), the Eleventh Circuit offered some guidance, concluding that the test "becomes one of reasonableness," that is, whether the challenged requirements "'freeze' the status quo" or "provide a realistic means of ballot access":

> Obviously any percentage or numerical requirement is "necessarily arbitrary." ... Once a percentage or number of signatures is established, it would probably be impossible to defend it as either compelled or least drastic. At any point, probably a fraction of a percentage point less, or a few petitioners less would not leave the interests of the state unprotected. Any numerical requirement could be challenged and judicially reduced, and then again, and again until it did not exist at all. This is not the thrust of the Court's teachings, however. Rather, a court must determine whether the challenged laws "freeze" the status quo by

effectively barring all candidates other than those of the major parties, ... and provide a realistic means of ballot access.... The focal point of this inquiry is whether a "reasonably diligent [ ] candidate [can] be expected to satisfy the signature requirements." ... Thus, the test is whether the legislative requirement is a rational way to meet this compelling state interest. The least drastic means test becomes one of reasonableness, i.e., whether the statute unreasonably encroaches on ballot access.

710 F.2d at 793 (*quoting American Party of Texas v. White,* 415 U.S. 767, 783, 94 S.Ct. 1296, 1307, 39 L.Ed.2d 744 (1974); *Storer v. Brown,* 415 U.S. 724, 742, 94 S.Ct. 1274, 1285, 39 L.Ed.2d 714 (1974); *Jenness,* 403 U.S. at 439, 91 S.Ct. at 1974). With these principles in mind, this court must determine whether the levels of support required by section 17–8–2.1, in conjunction with sections 17–16–2 and 17–16–3, are constitutional.

■ First of all, Alabama does not substantially restrict who may sign the access ballot petitions. There are no political affiliation restrictions for those who sign the petitions; there are no time limits on when the petition drive may begin; and there are no geographic restrictions on where the signatures may come from. Furthermore, if a party qualifies for the ballot statewide, it automatically qualifies for all local offices.[2]

Furthermore, in *Jenness v. Fortson* the Supreme Court upheld Georgia's level of support requirements, concluding that "Georgia in no way freezes the status quo, but implicitly recognizes the potential fluidity of American political life." 403 U.S. at 439, 91 S.Ct. at 1975. The Georgia requirements are as follows: Any party receiving 20% or more of the vote at the most recent gubernatorial or presidential election is entitled to have its nominee's name placed on

---

**2.** Since section 17–8–2.1 is a new law, there is no history of its actual impact on minor parties.

Furthermore, the plaintiffs have expressly stated that they are not challenging the constitutionality of the filing deadlines for the petitions.

*Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). Therefore, the court assumes for this lawsuit alone that the deadlines are not unconstitutionally restrictive.

the ballot; a party receiving less than 20% may have the name of its nominee placed on the ballot by filing a nominating petition signed by at least five percent of the total number of electors eligible to vote in the last election for the office the nominee is seeking. 403 U.S. at 433, 91 S.Ct. at 1971–72. Georgia, like Alabama, imposed no "suffocating restrictions" on the ability to obtain signatures for the access ballot petitions. 403 U.S. at 438, 91 S.Ct. at 1974.

The significance of *Jenness* is that the level of support requirements upheld by the Supreme Court are substantially more burdensome than Alabama's. Under the Georgia system, the signatures of 5% of the number of registered voters at the last general election are required; whereas, under the Alabama system, the signatures of only 1% of the votes cast in the last gubernatorial election are required. Therefore, not only is the percentage requirement lower in Alabama, but the pool of voters against which it is measured, those *voting* in gubernatorial elections rather than *registered* to vote, is smaller.

The plaintiffs contend that *Jenness* is distinguishable. On the relevant concerns, it is not. While the relief sought in *Jenness* was the right of an *independent* or party *nominee* to have his or her name on the ballot, the Court's analysis of that right specifically included the concerns presented in the instant case: whether a state's ballot access laws abridge a minor party's right of free speech and association in violation of the first amendment, 403 U.S. at 438–41, 91 S.Ct. at 1974–75, or discriminate against a minor party in violation of the equal protection clause, 403 U.S. at 440, 91 S.Ct. at 1975. And with these concerns in mind, the Court found that the Georgia requirements did not offend the U.S. Constitution. *See also Libertarian Party of Florida v. State of Florida, supra* (upholding 3% petition requirement for access to the ballot).

Considering Alabama's level of support requirements in their full setting, and with an eye to how the Supreme Court has treated similar requirements, this court concludes that Alabama's requirements are reasonable, that is, they provide a realistic means of ballot access. Accordingly, the court holds that the requirements, as embodied in sections 17–8–2.1, 17–16–2 and 17–16–3, do not violate the first and fourteenth amendments.

An appropriate judgment will be entered.