**Paul David LUNDE, Plaintiff,**

**v.**

**Matt SCHULTZ, Secretary of State, and Commissioner of Elections of the State of Iowa, in his official capacity only, and the State of Iowa, Defendants.**

**NO. 4:14–cv–00108–SMR–HCA**

United States District Court,
S.D. Iowa, Central Division.

Signed 04/17/2014

Paul D. Lunde, Ames, IA, for Plaintiff.

Meghan L. Gavin, Attorney General of Iowa, DES MOINES, IA, for Defendant.

## ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR PRELIMINARY IN-JUNCTION

STEPHANIE M. ROSE, U.S. DISTRICT COURT JUDGE

Before the Court are two pending motions: (1) Plaintiff Paul David Lunde's ("Plaintiff") Second Motion for Preliminary Injunction, filed March 24, 2014 [ECF No. 4]; and (2) Defendants Matt Schultz's ("Secretary Schultz" or "Defendant") and the State of Iowa's pre-answer Motion to Dismiss for Lack of Jurisdiction ("Motion to Dismiss"), filed April 11, 2014 [ECF No. 12]. Both parties have responded to the respective motions. [ECF Nos. 13, 14]. On April 14, 2014, the Court held oral argument on both pending motions, and both parties declined to submit additional briefing. [ECF No. 16]. Both matters are fully submitted.

## I. PLAINTIFF'S COMPLAINT

Plaintiff filed nomination papers with the Secretary of State of the State of Iowa to be included as a Republican candidate for United States Senator on the June 3, 2014 primary ballot. Compl. at 1–2, [ECF No. 1]. The filing deadline for nominations lapsed on March 14, 2014, the same day Plaintiff filed his papers. *Id.* at 4. Plaintiff's nomination papers were rejected, however, because Plaintiff failed to gather a sufficient number of signatures in support of his nomination, as required by Iowa law. *Id.* at 1; *see* Iowa Code § 43.20 (requiring nomination papers be signed by

eligible electors by "at least one percent of the voters of the candidate's party, in each of at least ten counties of the state, and in the aggregate not less than one-half of one percent of the total vote of the candidate's party in the state, as shown by the last general election"). Under § 43.20, and based on the voter turnout from the 2012 general election, Plaintiff was required to file nomination papers containing an aggregate number of signatures totaling 3,654.

Plaintiff alleges he failed to obtain the requisite number of signatures because the Republican County Chairs of larger counties did not aid him in gathering or furnishing signatures of Republican voters. Compl. at 3. Plaintiff states "that the apparent lack of cooperation in furnishing signatures might be related to Plaintiff's position with respect to the abortion issue," specifically Plaintiff's "pro-choice" stance. Id. at 3–4. Plaintiff contends his failure to obtain the requisite number of signatures was due, in part, to the County Chairs' refusals to assist him. Id. at 6.

Accordingly, Plaintiff makes three primary arguments in his Complaint.[1] First, Plaintiff argues the portion of Iowa Code § 43.20 requiring candidates obtain signatures of not less than one-half of one percent of the total vote of the candidate's party in the state (hereinafter the "aggregate requirement") violates Article I, Section 3 of the United States Constitution ("Qualifications Clause") by adding an additional qualification to be a U.S. Senator. Compl. at 1. Second, Plaintiff contends the aggregate requirement is unconstitutional as applied to him because the Republican County Chairs allegedly declined to furnish signatures to Plaintiff due to his "pro-choice" stance on abortion, thereby submitting Plaintiff to a "religious test" in violation of Article VI of the Constitution. Id. at 2–5. Finally, Plaintiff argues § 43.20 violates the Equal Protection Clause by requiring more signatures be obtained by a party candidate than is required of a nonparty or third party candidate. Pl's Br. Second Mot. for Temp. Rest. Order at 1–3, [ECF No. 10–4, at 1–3].

## II. DEFENDANTS' MOTION TO DISMISS

Defendants advance several arguments in support of their Motion to Dismiss, including allegations that the Court lacks subject matter jurisdiction to entertain Plaintiff's claims and that the Complaint fails to state a claim on which relief can be granted. With respect to the issue of jurisdiction, Defendants contend: (1) exclusive jurisdiction to address Plaintiff's Complaint lies in Iowa state court pursuant to the Iowa Administrative Procedure Act ("IAPA");[2] and (2) Plaintiff's Complaint is moot as it cannot be resolved prior to the June 3, 2014 primary election.[3] Defendants

---

1. Plaintiff's third claim, that Iowa Code § 43.20 violates the Equal Protection Clause, is not included in his Complaint, and appears for the first time in his Brief in Support of Plaintiff's Second Motion for Temporary Restraining Order, filed April 2, 2014. [ECF No. 10–4]. Plaintiff also elaborated on this claim in oral argument on April 14, 2014. As of the filing of this Order, Plaintiff has not amended his Complaint nor requested leave to amend to reflect the addition of his equal protection claim. In an effort to fully address Plaintiff's grievances, and because Defendants directly responded to Plaintiff's equal protection claim

in their Motion to Dismiss and at oral argument, the Court will consider Plaintiff's Complaint to be constructively amended to include this claim. See Farmland Indus., Inc. v. Morrison–Quirk Grain Corp., 54 F.3d 478, 481 (8th Cir. 1995) (allowing for constructive amendment of the pleadings upon express or implied consent of the parties as consistent with the liberal system of pleading).

2. Iowa Code Chapter 17A.

3. In their Motion to Dismiss, Defendants also argued (1) they are not "persons" susceptible

also contend Plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Because Defendants' Motion to Dismiss was filed pursuant to both Rule 12(b)(1) and 12(b)(6), the Court finds it prudent to distinguish between the materials relied upon in ruling on each portion of Defendants' Motion to Dismiss. Defendants have submitted an affidavit of Sarah Reisetter, Iowa Director of Elections, in support of its Rule 12(b)(1) Motion. [ECF No. 15]. The Court is permitted to consider this affidavit in ruling on Defendants' claim that the Court lacks subject matter jurisdiction. *See Johnson v. United States,* 534 F.3d 958, 964 (8th Cir. 2008) ("Trial courts have wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).") (internal quotation marks and citation omitted).

Plaintiff has filed an affidavit and copies of email communications in resistance to Defendants' Motion to Dismiss. [ECF No. 17]. Having reviewed these documents, the Court has determined they are relevant to Plaintiff's resistance to the Rule 12(b)(6) portion of Defendants' Motion to Dismiss. The Court declines to consider Plaintiff's

affidavit and email communications because they are extraneous to the Complaint, and consideration of these materials would convert Defendants' Motion to Dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d); *see Barron ex rel. D.B. v. South Dakota Bd. of Regents,* 655 F.3d 787, 792 (8th Cir. 2011) (acknowledging that consideration of a plaintiff's affidavit in opposition to a motion to dismiss converts the motion to one for summary judgment); *Sebrite Agency, Inc. v. Platt,* 884 F.Supp.2d 912, 916 (D. Minn. 2012) (declining to consider affidavits and other materials outside the amended complaint). Accordingly, the Court has not and will not consider Plaintiff's additional materials in ruling on Defendants' Motion to Dismiss, made pursuant to Rule 12(b)(6).

## III. JURISDICTIONAL ISSUES

### A. *Iowa Administrative Procedures Act*

Defendants contend the rejection of Plaintiff's nomination papers is an administrative decision by a state agency, and Plaintiff now seeks judicial review of that decision. Def's' Br. at 4–6. Accordingly, Defendants argue Plaintiff's sole avenue of judicial review for his claims is governed by the IAPA, which provides that such claims must be brought before a state

---

to suit under 42 U.S.C. § 1983; and (2) they are entitled to Eleventh Amendment Immunity. At oral argument, Defendants agreed that both contentions, with respect to Secretary Schultz, were only applicable if Plaintiff were seeking monetary damages. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (recognizing a state official in his or her official capacity, when sued for injunctive relief, is a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State); *Rose v. Nebraska,* 748 F.2d 1258, 1262 (8th Cir. 1984) (recognizing a suit for declaratory and injunctive relief against state officials, as opposed to the state itself or one of its agencies, is not barred

by the Eleventh Amendment). Plaintiff's Complaint does not seek damages, and he reiterated he was requesting only injunctive and declaratory relief at oral argument. Accordingly, the Court will not address these arguments on jurisdiction at this time.

However, the State of Iowa must be dismissed as a party to this action, as Eleventh Amendment immunity applies. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("[I]n the absence of consent a suit in which the State ... is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought.") (citations omitted).

district court. Iowa Code § 17A.19(2). However, Defendants agree that this Court has jurisdiction to hear and act on Plaintiff's Complaint if his claims are a general challenge to the constitutionality of the state's election statutes and the relief requested is declaratory in nature.

The Court agrees Plaintiff's claims and requested relief are somewhat difficult to discern. However, the Court believes Plaintiff's Complaint is properly construed as a request for a declaratory judgment that the challenged state statutes are unconstitutional and not as a request solely to review the Secretary of State's decision to reject his nomination papers. Although the Court has no doubt Plaintiff's ultimate goal is to be included on the primary ballot, he pursues that objective by way of a constitutional challenge to the state statute, and Defendants agree the Court maintains jurisdiction over such claims.

### B. Mootness

■ Defendants also contend Plaintiff's Complaint is moot because it cannot be resolved prior to the June 3, 2014 primary election. Def's' Br. at 6–7. "In general, a pending claim for injunctive relief becomes moot when the challenged conduct ceases and there is no reasonable expectation that the wrong will be repeated." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1024 (8th Cir. 2012) (citation omitted). However, a dispute is not moot when it "falls within a special category of disputes that are capable of repetition while evading review." *Turner v. Rogers*, 564 U.S. 431, 131 S.Ct. 2507, 2514–15, 180 L.Ed.2d 452 (2011) (internal quotation marks and citation omitted). A dispute is capable of repetition but evades review where (1) "the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration"; and (2) "there [is] a reasonable expectation that the same complaining party [will] be sub-

jected to the same action again." *Id.* at 2515 (alteration original).

■ The Court finds Plaintiff's claim is exactly the type that is capable of repetition yet evading review. Given the abbreviated and often unmovable timelines associated with election disputes and the prolonged nature of litigation, challenges to state election laws are likely the type of dispute that is too short to be fully litigated prior to its cessation or expiration. Here, Plaintiff was notified that his nomination papers had been rejected on March 15, 2014. [ECF No. 1–3, at 1–2]. He promptly filed suit on March 20, 2014. [ECF No. 1]. To comply with federal election laws, the ballots for many counties were due at the printer by March 31, 2014, and must be mailed to overseas absentee voters by April 19, 2014. Def's' Br. at 6–7. Moreover, Plaintiff's claim is capable of repetition, as Plaintiff may very well wish to run in future senatorial races. Accordingly, Plaintiff's Complaint is not moot. *See Norman v. Reed*, 502 U.S. 279, 287–88, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992) ("Even if the issue before us were limited to petitioners' eligibility to use the Party name on the 1990 ballot, that issue would be worthy of resolution as capable of repetition, yet evading review. There would be every reason to expect the same parties to generate a similar, future controversy subject to identical time constraints if we should fail to resolve the constitutional issues that arose in 1990.") (internal quotation marks and citation omitted); *Brown v. Chote*, 411 U.S. 452, 457 n.4, 93 S.Ct. 1732, 36 L.Ed.2d 420 (1973) ("Although the June 6 primary election has passed, the question raised is one capable of repetition, yet evading review. Consequently, the case is not moot.") (internal quotation marks and citation omitted); *Van Bergen v. Minnesota*, 59 F.3d 1541, 1547 (8th Cir. 1995) ("Al-

though [the plaintiff] has not stated with certainty that he will be running for office again, the probability that he will continue to work to spread his views and influence the outcome of elections is far from merely theoretical."); *McLain v. Meier*, 637 F.2d 1159, 1162 n.5 (8th Cir. 1980) ("Regardless of [the plaintiff's] candidacy in any future election, election law controversies tend not to become moot.").

## IV. FAILURE TO STATE A CLAIM

### A. Applicable Law

In addressing a motion to dismiss under Rule 12(b)(6), this Court "is constrained by a stringent standard ... A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove *no* set of facts in support of his claim which would entitle him to relief." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 545–46 (8th Cir. 1997) (quoting *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir. 1982) (citation omitted) (emphasis added)). In addition, the complaint must be liberally construed in the light most favorable to the plaintiff and should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *See Parnes*, 122 F.3d at 546.

For a complaint to survive a Rule 12(b)(6) motion to dismiss the pleadings must comply with Federal Rule of Civil Procedure 8(a)(2) and the standards for pleadings promulgated by the United States Supreme Court. Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has read this standard to require that the complaint contain sufficient factual matter that, when accepted as true, states a claim of relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

When evaluating a motion to dismiss, the court must accept as true all factual allegations contained in the complaint. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. However, legal conclusions are not presumed to be true. *Id.*; *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459–60 (8th Cir. 2010) ("Courts must accept ... specific factual allegations as true but are not required to accept ... legal conclusions.") (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). As a result, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Thus, to survive a motion to dismiss, the factual allegations, absent legal conclusions and mere recitals of elements, must state a plausible claim for relief. *Id.* at 679, 129 S.Ct. 1937. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In line with these principles, the Supreme Court has constructed a two-pronged approach to determining whether a complaint gives rise to a plausible entitlement to relief. *Id.* at 679, 129 S.Ct. 1937. First, the reviewing court should begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* After disregarding these conclusions, the court should assume the veracity of the remaining factual allegations and "determine whether they plausibly give rise to an enti-

tlement to relief." *Id.* "The facts alleged in the complaint " 'must be enough to raise a right to relief about the speculative level.' " *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)) (additional internal quotation marks and citation omitted).

### B. The Aggregate Requirement as an Additional Qualification

■ Plaintiff first challenges the aggregate requirement of Iowa Code § 43.20(1)(a), which provides that nomination papers shall be signed by eligible electors as follows:

> If for governor, or United States senator, by at least one percent of the voters of the candidate's party, in each of at least ten counties of the state, and in the aggregate not less than one-half of one percent of the total vote of the candidate's party in the state, as shown by the last general election.

Plaintiff contends the aggregate requirement adds an additional qualification for U.S. Senator to those delineated by Article I, Section 3 of the Constitution.[4] This claim is without merit.

The United States Supreme Court has previously rejected the argument that the Qualifications Clause is violated by requiring a prospective candidate to obtain an aggregate number of signatures. *Storer v. Brown*, 415 U.S. 724, 738, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). In *Storer v. Brown*, the plaintiffs challenged a portion of a California statute that required an independent candidate to file nomination papers "signed by voters not less in number than 5% nor more than 6% if the entire vote case in the preceding general election in the area for which the candidate seeks to run." 415 U.S. at 726–27, 94 S.Ct. 1274.

Plaintiffs in that case argued that the statute added "qualifications for the office of United States Congressman, contrary to Art. I, s 2, cl. 2, of the Constitution." *Id.* at 727, 94 S.Ct. 1274. The Supreme Court upheld the statute, recognizing the significant and necessary freedom given to states to regulate elections under Article I. *Id.* at 729–30, 94 S.Ct. 1274 ("Moreover, as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes. In any event, the States have evolved comprehensive, and in many respects complex, election codes regulating in most substantial ways, with respect to both federal and state elections ... [including] selection and qualification of candidates.").

The Supreme Court reiterated the state's ability to regulate elections without violating the Qualifications Clause in *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995). In that case, which concerned an allegation that Arkansas statute violated the Qualifications Clause by limiting the number of terms an individual could serve in U.S. Congress, the Supreme Court stated

> The provisions at issue in *Storer* and our other Elections Clause cases were thus constitutional because they regulated election procedures and did not even arguably impose any substantive qualification rendering a class of potential candidates ineligible for ballot position. They served the state interest in protecting the integrity and regularity of the election process, an interest independent of any attempt to evade the constitutional prohibition against the im-

---

4. At oral argument, Plaintiff explained that he is indirectly challenging the aggregate requirement as it relates to his newly added equal protection claim, discussed in Section IV.D, *infra*. Nonetheless, the Court will address Plaintiff's Qualifications Clause argument as it appears in his Complaint.

position of additional qualifications for service in Congress. And they did not involve measures that exclude candidates from the ballot without reference to the candidates' support in the electoral process.

*U.S. Term Limits, Inc.*, 514 U.S. at 835, 115 S.Ct. 1842.

The statute at issue here is similar to that at issue in *Storer* and affirmed by the Supreme Court as constitutionally sound in *U.S. Term Limits, Inc.* Iowa Code § 43.20 regulates election procedures and adds no additional substantive qualification that would render a class ineligible for candidacy. Accordingly, Plaintiff's claim that Iowa Code § 43.20 violates the Qualifications Clause of the Constitution fails.[5]

### C. The Religious Test

■ Plaintiff next contends that the aggregate requirement is unconstitutional as applied to him because the Republican

County Chairs declined to assist him in gathering signatures of support, due to his "pro-choice" stance on abortion, thereby submitting Plaintiff to a religious test in violation of Article VI of the Constitution.[6] For the reasons that follow, Plaintiff fails to state a claim upon which relief can be granted.

First, although Plaintiff frames his claim as an as-applied challenge to § 43.20, the parties and the Court have proceeded with the understanding that Plaintiff's allegations should be construed as a claim pursuant to 42 U.S.C § 1983. Accordingly, Plaintiff alleges that the Republican County Chairs are state actors who have violated his constitutional rights by subjecting him to a "religious test" in declining to furnish supporter signatures allegedly due to Plaintiff's "pro-choice" beliefs.

Even assuming the County Chairs are state actors for the purpose of § 1983 liability,[7] Plaintiff has deliberately not includ-

---

5. The Court notes that courts have upheld constitutional challenges to aggregate requirements in other state statutes, all of which exceed the one-half of one percent required by Iowa Code § 43.20. *See Jenness v. Fortson*, 403 U.S. 431, 432, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971) (upholding a third party candidates' challenge to a Georgia election statute that required a nonparty candidate to secure the signatures of five percent of voters to be printed on the ballot); *Am. Party of Tex. v. White*, 415 U.S. 767, 780, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974) (upholding third party candidates' challenge to Texas's one percent aggregate requirement); *Libertarian Party of Florida v. State of Fla.*, 710 F.2d 790, 795 (11th Cir. 1983) (upholding third party candidates' challenge to Florida's three percent aggregate requirement); *see also Green Party of Tenn. v. Hargett*, 700 F.3d 816, 824 (6th Cir. 2012) ("[Tennessee's] 2.5% signature requirement, standing alone, is not unconstitutional on its face."); *Swanson v. Bennett*, 219 F.Supp.2d 1225, 1233 (M.D. Ala. 2002) (concluding third party candidates had little likelihood of success in showing Alabama's three percent aggregate requirement was unconstitutional).

6. Article VI provides, in relevant part: "The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution; but no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States."

7. Plaintiff contends the County Chairs are state actors because their conduct and duties are regulated by Iowa Code Chapter 43. Defendants have argued by analogy that each citizen's conduct is regulated by the Iowa criminal code, as are a number of professions, but this does not make them state actors. The Court notes that political parties can, and have been, considered state actors for questions of civil rights violations. *See, e.g., Morse v. Republican Party of Virginia*, 517 U.S. 186, 194–95, 116 S.Ct. 1186, 134 L.Ed.2d 347 (1996) (discussing the practice of charging a registration fee for convention participation and finding a political party exercised delegated state power in placing a candidate's name on the ballot); *see Terry v. Adams*, 345

ed these individuals or the Republican Party of Iowa as parties to this suit. Plaintiff has made no allegation that Secretary Schultz engaged in any conduct akin to subjecting Plaintiff to a religious test. Indeed, the only allegation Plaintiff makes against Secretary Schultz is that he failed to personally inspect the nomination papers of each prospective candidate and conclude that Plaintiff had not been provided support due to his stance on abortion. Moreover, even if such a review were required of Secretary Schultz, Plaintiff has failed to explain how the failure to do so would be a violation of his constitutional rights.

In addition to these defects, Plaintiff has also not pled facts sufficient to support a claim that he has been subjected to a "religious test" in violation of Article VI. Again, even assuming for the sake of argument that a County Chair could not constitutionally refuse to assist a candidate on the basis of religion, Plaintiff has not pled facts sufficient to demonstrate that is what occurred. First, Plaintiff has not alleged facts sufficient to show his stance on abortion was the reason he was denied assistance by the County Chairs in the numerous counties in which he sought signatures, and his allegations that he was denied assistance due to his pro-choice views are almost entirely speculative. Plaintiff alleges he notified Secretary Schultz that "it

was *possible* that the apparent lack of cooperation in furnishing signatures *might be* related to Plaintiff's position with respect to the abortion issue." Compl. at 3 (emphasis added). Plaintiff's Complaint concludes, based on the number of signatures he received as compared to the other "pro-life" candidates, that he was not provided assistance based on his views on abortion. Such conclusions are insufficient to support his claim.

Second, Plaintiff erroneously equates beliefs related to abortion with religion, contending that by requiring him to hold "pro-life" views, the County Chairs are requiring that he be "religious" and are thereby subjecting him to a "religious test." However, Plaintiff provides no support for this proposition, contending only that, in his experience, individuals who oppose abortion do so on religious grounds. The Court is unaware of, and the Plaintiff has not identified, any support for the proposition that one's beliefs related to abortion, in and of itself, create a protected class on the basis of religion, or is otherwise tantamount to religion. Accordingly, even making all legal and logical assumptions in favor of Plaintiff, he has failed to state a claim upon which relief can be granted and this claim must be dismissed.

### D. Equal Protection

■ Finally, Plaintiff argues Iowa Code § 43.20 violates the Equal Protection

---

U.S. 461, 470, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (holding that a party cannot racially discriminate voters in primary elections, with or without state regulation); *Smith v. Allwright*, 321 U.S. 649, 661–62, 64 S.Ct. 757, 88 L.Ed. 987 (1944) (same). However, with respect to a party's internal operation, courts have been less inclined to find state action. *See Johnson v. Knowles*, 113 F.3d 1114, 1120 (9th Cir. 1997) (acknowledging that a county Republican committee "could act under color of state law for some purposes," but not in its decision to fire two employees because of their sexual orientation); *Blank v. Heineman*, 771 F.Supp. 1013, 1015 (D. Neb. 1991) (dis-

missing allegation that defendants unconstitutionally fired plaintiffs because of religious discrimination) ("It is clear that to establish a violation of 42 U.S.C. § 1983, the defendants must have acted under color of law. As the plaintiffs have failed to allege, and further that the Court fails to find, that defendants acted under color of law, the plaintiffs cannot maintain their action under 42 U.S.C. § 1983."). Because the Court finds Plaintiff's claim fails on other grounds, it need not and does not determine whether the Republican County Chairs were state actors for purposes of § 1983 liability.

Clause by requiring party candidates— that is, candidates who seek to be included on the primary ballot as either a Republican or Democrat—to obtain more signatures than a nonparty or third party candidate who seeks inclusion on the ballot for the general election. Iowa Code § 45.1 provides, "Nominations for candidates for president and vice president, governor and lieutenant governor, and for any other statewide elected offices may be made by nomination petitions signed by not less than one thousand five hundred eligible electors residing in not less than ten counties of the state." Plaintiff argues that because he was required to obtain 3,654 signatures to be included as a Republican candidate in the primary election, as opposed to the 1,500 signatures required of a nonparty candidate in the general election, Iowa Code § 43.20 violates the Equal Protection Clause. The Court finds this argument unavailing.

■ "To determine whether or not a statute violates the Equal Protection Clause, [the Court] consider[s] 'the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification.'" *Libertarian Party of North Dakota v. Jaeger*, 659 F.3d 687, 702 (8th Cir. 2011) (quoting *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968)). Courts have repeatedly recognized the state's interest in regulating elections, including enacting restrictions on the election process and the eligibility of candidates. *See, e.g., Jenness*, 403 U.S. at 442, 91 S.Ct. 1970 ("There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name ... on the ballot—the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election."); *Libertarian Party of North Dakota*, 659 F.3d at 702 (identifying the state's interests in dictating eligibility of candidates as "protecting the integrity of the political process from frivolous or fraudulent candidacies, ensuring the election process is efficient, avoiding voter confusion caused by an overcrowded ballot, and avoiding the expense and burden of runoff elections").

■ "However, in the context of equal protection, [the Court] engage[s] in further considerations, namely whether the law disadvantages one group over another so as to result in unequal treatment and whether this unequal treatment is justified by a compelling interest." *Id.* (citing *Williams*, 393 U.S. at 30, 89 S.Ct. 5). Here, Plaintiff contends, and Defendants do not dispute, that Iowa Code § 43.20 typically disadvantages party candidates by requiring they obtain more signatures than nonparty candidates.[8] Thus, the relevant question is not whether the aggregate requirements of §§ 43.20 and 45.1 advance an important state interest, as it is clear that they do. Rather, the relevant question is whether the unequal treatment of party and nonparty candidates here is justified by a compelling state interest. The Court finds that it is.

---

8. It is not clear, however, that § 43.20 necessarily results in a disadvantage for party candidates. Section 43.20 requires an aggregate number of signatures based on a party's voter turnout in the prior general election. By the Court's understanding, if that party's voter turnout in the prior election was unusually low, the reduced turnout would be reflected in the number of signatures the candidate must obtain for the subsequent primary election. For example, if the Republican vote in the prior general election was 300,000, a Republican candidate would only need to obtain 1,500 signatures to be included on the primary ballot pursuant to § 43.20.

At the outset, the Court recognizes the unusual position in which it finds itself. Virtually all ballot access jurisprudence concerns challenges brought by nonparty or third party candidates, who argue the challenged statute results in unequal treatment that disadvantages nonparty candidates. Here, Plaintiff challenges a pair of Iowa statutes clearly intended to make it *easier* for a nonparty candidate to be included on the ballot. Indeed, the Court finds this very interest in expanding ballot access to nonparty candidates to be a compelling one.

In the face of First and Fourteenth Amendment challenges to state election laws, the Supreme Court requires that states provide a "feasible means for other political parties and other candidates to appear on the general election ballot." *Storer*, 415 U.S. at 728, 94 S.Ct. 1274. Heeding this directive, courts have routinely and repeatedly indicated that "the crux of the analysis is whether the challenged statute 'freezes the status quo' of a two-party system, or whether 'it affords minority political parties a real and essentially equal opportunity for ballot qualification.'" *Libertarian Party of North Dakota*, 659 F.3d at 694 (quoting *Am. Party of Tex.*, 415 U.S. at 787–88, 94 S.Ct. 1296). Indeed, this analysis recognizes the "qualitative difference between an independent candidacy and a party candidacy that justifies differences in treatment." *Libertarian Party of Florida*, 710 F.2d at 795 (citing *Storer*, 415 U.S. at 745, 94 S.Ct. 1274). As Defendants suggested at oral argument, affiliation with a major political party carries a certain "caché" not afforded to nonparty candidates. *See id.* ("When candidates list a party affiliation ... the voters and the state are entitled to some assurance that particular party designation has some meaning in terms of a 'statewide, ongoing organization with distinctive politi-

cal character.'") (quoting *Storer*, 415 U.S. at 745, 94 S.Ct. 1274).

Accordingly, §§ 43.20 and 45.1 seek to prevent the exact injury federal courts have been redressing for decades by allowing nonparty candidates *greater* access to ballot inclusion. The State of Iowa has made a concerted effort to thaw the status quo of the two-party system and "afford minority political parties a real and essentially equal opportunity for ballot qualification," *Am. Party of Tex.*, 415 U.S. at 788, 94 S.Ct. 1296. The Court finds this interest to be a compelling one, sufficient to defeat Plaintiff's equal protection challenge. As such, Plaintiff's claim that § 43.20 violates the Equal Protection Clause must be dismissed.

## V. CONCLUSION

The State of Iowa is DISMISSED as a party to this action, pursuant to the Eleventh Amendment and *Pennhurst State Sch. & Hosp. v. Halderman*. For the reasons outlined above, Defendant Matt Schultz's Motion to Dismiss [ECF No. 12], filed pursuant to Fed. R. Civ. P. 12(b)(6), is GRANTED, and Plaintiff Paul David Lunde's Complaint [ECF No. 1] is DISMISSED. Plaintiff's Second Motion for Preliminary Injunction [ECF No. 4] is DENIED.

IT IS SO ORDERED.